1998 ND 150

Peter SWENSON, Plaintiff and Appellant,

and

Sally Swenson, Plaintiff,

v.

Jerry RAUMIN and Roger Raumin, a copartnership, doing business as Raumin Brothers, and doing business as MRTJ Potato Warehouse, Defendants and Appellees.

Civil No. 980008.

Supreme Court of North Dakota.

Aug. 18, 1998.

Kevin B. Spaeth, of Spaeth, Thelen, Van Voorhis & Jasmer, Grand Forks, for plaintiff and appellant.

Howard D. Swanson, of Letnes, Marshall & Swanson, Ltd., Grand Forks, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] This is an appeal from a summary judgment dismissing Peter Swenson and Sally Swenson's action against Peter Swenson's employers, Jerry Raumin and Roger Raumin, doing business as the Raumin Brothers and MRTJ Potato Warehouse, to rescind a settlement agreement and collect damages for personal injuries sustained by Peter Swenson in a work-related farm injury. We conclude the trial court did not err in granting summary judgment dismissal of the Swensons' action because they did not present any evidence to satisfy the reasonable diligence requirements for rescission under N.D.C.C. § 9–09–04. We therefore affirm.

I

[¶ 2] On January 31, 1986, Peter Swenson injured his hip and back when he slipped and fell while working at the Raumin Brothers' potato warehouse in Grafton. On April 11, 1986, a little more than two months after his injury and initial hospitalization, Peter Swenson signed a "Settlement and Full and Final Release of All Claims" for $2,400 offered to him by an insurance adjustor. The settlement agreement "forever discharge[d]" the Raumin Brothers from "all known and unknown" damages resulting from the January 31, 1986, accident, and the parties acknowledged "the injuries sustained may be permanent and progressive and ... recovery therefrom is uncertain and indefinite." In May 1986, Peter Swenson learned from medical professionals his "neck vertebrae was cracked." In October 1986, about six months after signing the release, Peter Swenson underwent major surgery to correct the injury to his vertebrae resulting from the accident, incurring medical costs in excess of $30,000. After the surgery, his treating physician assessed Peter Swenson as having a 13 percent permanent partial impairment rating.

[¶ 3] In January 1992, almost six years after the accident, Peter Swenson and Sally Swenson brought this action against the Raumin Brothers. Peter Swenson requested rescission of the settlement agreement and sought more than $250,000 in damages. Sally Swenson sought more than $50,000 on her separate claim for loss of consortium.

[¶ 4] The trial court granted the Raumin Brothers' motion for partial summary judgment on Peter Swenson's rescission action. The court concluded the settlement agreement Peter Swenson signed was a "complete settlement of all claims against" the Raumin Brothers arising out of the January 31, 1986, accident and all injuries sustained by Peter Swenson were known to him by May 1986. The court further concluded Peter Swenson had failed to make restitution of the amount received as consideration for the settlement agreement and failed to explain the delay of nearly six years in seeking rescission. The court therefore concluded Peter Swenson was not entitled to rescission of the settlement agreement because he had failed to comply with the reasonable diligence requirements for rescission under N.D.C.C. § 9–09–04.

[¶ 5] The trial court, on its own motion, granted a N.D.R.Civ.P. 54(b) certification, but we dismissed the Swensons' prior appeal from the partial summary judgment because the Rule 54(b) certification was improvidently granted. *See Swenson v. Raumin*, 520 N.W.2d 858 (N.D.1994). A jury later rejected Sally Swenson's loss of consortium claim. Judgment was entered dismissing the Swensons' actions.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Peter Swenson's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] The sole issue on appeal is whether the trial court erred in granting summary judgment dismissal of Peter Swenson's claim for rescission and damages.

## A

[¶ 8] Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either litigant is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the results. *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 12, 576 N.W.2d 505. On appeal, we review the evidence in the light most favorable to the party opposing the summary judgment motion. *Freed v. Unruh*, 1998 ND 34, ¶ 6, 575 N.W.2d 433.

[¶ 9] In considering a motion for summary judgment, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate. *Matter of Estate of Otto*, 494 N.W.2d 169, 171 (N.D. 1992). Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive standard of proof at trial when ruling on a summary judgment motion. *State*

*Bank of Kenmare v. Lindberg*, 471 N.W.2d 470, 474–75 (N.D.1991). The party resisting the motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Kummer v. City of Fargo*, 516 N.W.2d 294, 297 (N.D.1994). Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Matter of Estate of Stanton*, 472 N.W.2d 741, 746 (N.D.1991).

## B

[¶ 10] In this case, the Raumin Brothers supported their summary judgment motion with an affidavit, signed by their attorney, attesting to the "facts in connection with said cause of action." The facts attested to are the date of Peter Swenson's injury, the date Peter Swenson signed the release, the date the Swensons brought this lawsuit, and the nature of the relief they sought.

[¶ 11] We have often noted an affidavit of counsel in support of or resistance to a motion for summary judgment made on information and belief does not comply with N.D.R.Civ.P. 56(e) because an attorney's hearsay affidavit is not a substitute for the personal knowledge of a party. *See, e.g., Hummel v. Mid Dakota Clinic, P.C.*, 526 N.W.2d 704, 708 (N.D.1995). Nevertheless, the erroneous presentation of an affidavit that does not meet Rule 56(e) standards does not require reversal of the summary judgment if other evidence in the record supports summary judgment. *See Luithle v. Taverna*, 214 N.W.2d 117, 124 (N.D.1973).

[¶ 12] The information recited in the attorney's affidavit appeared in court records. The complaint and the settlement agreement were in the record, and the date of and information about Peter Swenson's major surgery appear in his answers to interrogatories, also filed with the court. A party is not required to file an affidavit in support

of a motion for summary judgment. *See* N.D.R.Civ.P. 56(a) and (b). Because the information in the affidavit already appeared in the record before the trial court, we conclude any error in relying on the attorney's affidavit is harmless.

### C

[¶ 13] Under N.D.C.C. §§ 9–08–08 and 9–08–09, a person may automatically rescind a personal injury settlement agreement within six months after the date of injury if the settlement agreement was made within 30 days after the injury or if it was made while the injured person remained under disability. The Swensons did not avail themselves of this procedure, and the six-month limitation has long since passed.

[¶ 14] Nevertheless, this Court has held N.D.C.C. §§ 9–08–08 and 9–08–09 provide a remedy in addition to the general rescission statute, N.D.C.C. § 9–09–04, and an action to rescind a personal injury settlement agreement can be brought under the general statute "subject only to the [six-year] statute of limitations contained in Section 28–01–16." *Mitzel v. Schatz*, 175 N.W.2d 659, 660 Syllabus 5 (N.D.1970). *See also Wock v. Kuhn*, 221 N.W.2d 65, 68 (N.D.1974).

[¶ 15] N.D.C.C. § 9–09–04 provides:

*Rules governing rescission.* Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

1. He shall rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

2. He shall restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so.

[¶ 16] Although the *Wock* and *Mitzel* courts said a general rescission action is "subject only to" the six-year statute of limi-

tations, we reject the Swensons' argument the other requirements for a rescission action are eliminated under N.D.C.C. § 9–09–04 and all they must do is bring their action within the six-year statute of limitations. Not only does the statute refer to the two sections not applicable in this case, but this Court specifically recognized in *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 128 n. 2 (N.D.1990), prompt rescission is a requirement separate and distinct from any statute of limitations question:

Our case law demonstrates that a waiver of the right to rescind under § 9–09–04 can occur even when the action is commenced well within the running of the six-year statute of limitations. *See Lindemann v. Lindemann*, 336 N.W.2d 112 (N.D.1983) [right to rescind waived when action brought approximately two and one-half years after plaintiffs became aware of right to rescind]; *Fedorenko v. Rudman*, 71 N.W.2d 332 (N.D.1955) [right to rescind waived when action brought 16 months after plaintiffs became aware of right to rescind].

Thus, rescission is proper only if the party seeking rescission uses reasonable diligence to rescind promptly upon discovery of the facts which entitle the party to rescind, and if the party restores to the other party anything of value which was received under the contract. *Holcomb v. Zinke*, 365 N.W.2d 507, 510 (N.D.1985). Even though the Swensons brought this action barely within the six-year statute of limitations, they must also show compliance with the prompt rescission requirements of N.D.C.C. § 9–09–04.

[¶ 17] In *Berg v. Hogan*, 322 N.W.2d 448, 451 (N.D.1982), this Court construed the statutory phrase, "discovering the facts which entitle him to rescind," as meaning "notice of facts and circumstances which would put a person of ordinary prudence and intelligence on inquiry is, in the eyes of the law, equivalent to knowledge of all of the facts a reasonable diligent inquiry would disclose." In interpreting the statutory phrase, "aware of his right to rescind," the Court said:

We believe a party after acquiring knowledge of the facts has a responsibility to

promptly find out, if not known, what legal rights result from them. Failure to do so may militate against the party. We also believe that once a party has the facts, the party is required to find out what legal significance results. The same concept which applies after a party acquires information indicating that certain facts may exist to find out if they do and what they are, applies to this matter. The party, in effect, has a two-fold responsibility to find out what the facts actually are and then find out what legal rights result from those facts, if the party is not aware of the resulting legal rights. Failure to do so will be construed against the party.

*Berg*, 322 N.W.2d at 453. Although the timeliness of a decision to rescind is generally a question of fact subject to the circumstances of each particular case, *see Check Control, Inc. v. Shepherd*, 462 N.W.2d 644, 648 (N.D. 1990), the circumstances may be such as to make the question one of law for the court to decide. *See Lindemann*, 336 N.W.2d at 116.

▬▬ [¶.18] The party seeking rescission has the burden of proving reasonable diligence to promptly rescind upon discovering facts entitling the party to rescind, as well as proving an offer to restore to the other contracting party everything of value received under the contract. *See, e.g., Vermilyea v. BDL Enterprises, Inc.*, 462 N.W.2d 885, 889 (S.D.1990). The only evidence presented by the Swensons [1] in opposition to the summary judgment motion was an affidavit of Sally Swenson which stated in pertinent part:

2. There are many disputed questions of fact concerning her husband's signing of the Release, and his lack of understanding of the terms of the Release.

3. My husband feared he would lose his job if he did not sign the Release; there are disputed questions of fact concerning this economic stress placed upon my husband.

4. My husband lacks the education to understand the Release document; he completed only the first six elementary grades in school.

5. There was a mutual mistake of facts at the time the Release was signed; all parties believed that Peter had a fractured hip only, requiring no operation, while in fact he had also a fractured spine which required a serious operation.

6. There are disputed questions of fact as to whether or not the Release was intended to cover unknown injuries.

[¶ 19] While these allegations address the merits of the rescission action, nothing the Swensons presented to the trial court addresses the reasonable diligence requirements for a rescission action. Nor does the record show an offer to restore the value Peter Swenson received under the settlement agreement, a "condition precedent" to maintaining a rescission action. *Volk v. Volk*, 121 N.W.2d 701, 706 (N.D.1963). Peter Swenson knew of further medical complications in May 1986, and underwent major spinal surgery in October 1986, just a few months after signing the settlement agreement. At that time, Peter Swenson knew or should have known the actual facts, and then should have found out what legal rights result from those facts. *See Berg*. Peter Swenson did not do so.

[¶ 20] All of the facts the Swensons rely on to support rescission were known or should have been known to Peter Swenson either at the time he signed the settlement agreement or shortly afterward. There is simply no explanation given by the Swensons for waiting nearly six years to bring the rescission action.

[¶ 21] We conclude the trial court did not err in ruling, as a matter of law, the Swensons did not meet the reasonable diligence requirements in bringing this rescission action.

### III

[¶ 22] We have considered the other arguments made by the Swensons and deem them

---

1. The Swensons' counsel on appeal is different than their counsel during the summary judgment proceedings.

to be without merit. The summary judgment is affirmed.

[¶ 23] VANDE WALLE, C.J., NEUMANN and MARING, JJ., concur.

MESCHKE, Justice, dissenting.

[¶ 24] Because I would reverse the summary judgment dismissing Peter Swenson's claim, I respectfully dissent.

[¶ 25] Paragraph VIII. of Peter Swenson's complaint alleged:

That on April 11, 1986, Peter Swenson signed a "Release of All Claims" which should be declared null and void and cancelled for the following reasons:

(1) Peter Swenson had only a sixth grade education and did not understand the meaning of the document;

(2) He had no attorney's advice before signing;

(3) There was a mutual mistake of fact in that the spinal fracture had not been discovered on April 11, 1986, and was not discovered until after May 1, 1986; and

(4) The release is unconscionable on the face of it, reciting $2,400 as consideration, while the medical bills alone are in excess of $28,000.

These facts, if proved, state a claim to set aside the release.

[¶ 26] No evidence to dispute Peter's allegations was tendered by Raumins with their motion for summary judgment. Raumin's motion was no better than one to dismiss for failure to state a claim. The affidavit by Raumin's attorney did not meet the Rule 56(d) requirements of admissible evidence for summary judgment, as the majority opinion recognizes. Nor did it proffer any evidence to show Peter had not continued "under disability" to the time of suit. I would not sift the record for evidence to support Raumin's motions, and I do not think we should encourage trial judges to do so.

[¶ 27] Peter's failure to file a responsive affidavit did not aid Raumins. Rule 56 does not authorize the entry of a summary judgment when the adverse party fails to respond by filing proof in opposition unless it is appropriate to do so. *Adams v. Canterra Pe-*

*troleum, Inc.,* 439 N.W.2d 540, 543 (N.D. 1989) (citing *Rice v. Chrysler Motors Corp.,* 198 N.W.2d 247, 252 (N.D.1972)).

Failure of the adverse party in a summary judgment proceeding to respond by filing affidavits or other proof as required by Rule 56(e), N.D.R.Civ.P., does not authorize the entry of summary judgment against him when the proof submitted in support of the motion by the moving party indicates the presence of a genuine issue of material fact.

*Luithle v. Taverna,* 214 N.W.2d 117, 124 (N.D.1973) (quoting *Rice v. Chrysler Motors Corp.,* 198 N.W.2d 247 (N.D.1972), at syllabus paragraph 1). Since Raumins did not present any evidence, "by affidavit or otherwise," to negate Peter Swenson's allegations of unconscionably and continuing disability, Raumins were not entitled to summary judgment.

[¶ 28] Sally Swenson's affidavit, (obviously based on her personal knowledge), opposing summary judgment offered some admissible evidence for Peter's claim. She swore that "[m]y husband lacks the education to understand the Release document; he completed only the first six elementary grades in school," as well as "his lack of understanding of the terms of the Release." She swore Peter had had "a fractured spine which required a serious operation." In my opinion, there were sufficient allegations about the unconscionability of the release to inferentially explain why Peter Swenson waited so long to contest the release.

[¶ 29] Because I would reverse the summary judgment and remand for trial of Peter Swenson's claim, I respectfully dissent.

[¶ 30] Herbert L. Meschke